IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LUAR MUSIC CORP,

Plaintiff,

v.                                              Civil No.: 09-2263(DRD)

UNIVERSAL MUSIC GROUP, INC and
UMG RECORDINGS, INC.,

Defendants.

## OPINION AND ORDER

This copyright infringement action brought under the Copyright
Act of 1976, 17 U.S.C. § 101, *et seq.*, (the "Copyright Act") arises
from the alleged unlawful reproduction, distribution and adaptation
of the song and sound recording "Dale Don Dale" (the "Copyrighted
Work").  (Docket No. 1, ¶¶ 1, 30-32, 39, 42-46, 55-75).  Plaintiff
Luar Music Corp., ("Plaintiff" or "Luar") alleges that Defendants
Universal Music Group ("Universal Music") and UMG Recordings ("UMG
Recordings")(collectively, "Defendants") violated its rights when
Defendants included the Copyrighted Work as part of the phonorecord
Don Omar Da Hitman Presents Reggaeton Latino ("Reggaeton Latino")
and a remixed version of the Copyrighted Work (the "Copyrighted
Work Remix") as part of the phonorecord Fiebre de Reggaeton.
(Docket No. 1, ¶¶ 31-32, 42-46).

Before the Court is Plaintiff's motion for summary judgment
and Defendants' cross-motion for summary judgment.  (Docket Nos.

-1-

104, 119).  For the reasons set forth below, Plaintiff's motion for summary judgment is hereby **DENIED** and Defendants' cross-motion for summary judgment is hereby **DENIED in part and GRANTED in part.**

BACKGROUND

I.   **Procedural Background**

Plaintiff commenced this action on December 18, 2009.  (Docket No. 1).  In an *Opinion and Order* dated July 29, 2011, this Court granted Defendants' motion to dismiss Plaintiff's claims relating to the electronic exploitation of the Copyrighted Work.  (Docket Nos. 62, 107).  Subsequently, in an *Opinion and Order* dated March 6, 2012, this Court granted in part and denied in part Defendants' motion to dismiss, granted Defendants' cross-motion for partial summary judgment, and denied Plaintiff's converted motion for summary judgment.  (Docket No. 155); Luar Music Corp. v. Universal Music Group, Inc., No. 09-2263, 2012 WL 738987 (D.P.R. Mar. 6, 2012)("Luar Music I").  Therein, the Court held that Plaintiff's action for damages from alleged copyright infringement occurring more than three (3) years prior to commencing the action was time-barred by the Copyright Act's statute of limitations, whereas Plaintiff's action for damages from alleged copyright infringement occurring within the three (3) years prior to filing suit was timely.  Id. at *5-15.

On July 22, 2011, Plaintiff filed the instant motion for summary judgment.  (Docket No. 104).  Defendants opposed and cross-

-2-

moved for summary judgment on September 12, 2011.  (Docket No.
119).  On October 12, 2011, Plaintiff replied to Defendants'
opposition and opposed Defendants' cross-motion for summary
judgment.  (Docket No. 129).

## II.  Factual Background

When analyzing a motion for summary judgment, the Court must
view the facts in the light most favorable to the non-moving party.
See Vera v. McHugh, 622 F.3d 17, 26 (1st Cir. 2010); see also
Agusty-Reyes v. Dep't of Educ. Of P.R., 601 F.3d 45, 48 (1st Cir.
2010); Cadle Co. v. Hayes, 116 F.3d 957, 959-60 (1st Cir. 1997).
"Where, as here, a district court rules simultaneously on cross-
motions for summary judgment, it must view each motion, separately,
through this prism."  Estate of Hevia v. Portrio Corp., 602 F.3d
34, 40 (1st Cir. 2010)(citing Houlton Citizens' Coal v. Town of
Houlton, 175 F.3d 178, 183-84 (1st Cir. 1999).  However, while the
Court "draw[s] all reasonable inferences in the light most
favorable to [the non-moving party] . . . we will not draw
unreasonable inferences or credit bald assertion, empty conclusions
or rank conjecture."  Vera, 622 F.3d at 26 (internal quotations and
citations omitted)(emphasis in original);  see also Ayala-Gerena v.
Bristol Myers-Squibb Co., 95 F.3d 86, 95 (1st Cir. 1996).  Further,
the Court will not consider hearsay statements nor other
allegations presented by parties that do not properly provide
specific references to the record.  See D.P.R. Civ. R. 56(e)("The

-3-

[C]ourt shall have no independent duty to search or consider any part of the record not specifically referenced."); see also Morales v. A.C. Orssleff's EFTF, 246 F.3d 32, 33 (1st Cir. 2001)(finding that, where a party fails to buttress factual issues with proper record citations, judgment against that party may be appropriate); Garside v. Osco Drug, Inc., 895 F.3d 46, 50 (1st Cir. 1990)("Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment.").

Plaintiff, an entity that manages music projects, including licensing songs, is the owner of the Copyrighted Work.[1]  (Docket No. 105, ¶¶ 2-3; Docket No. 128-1, ¶ 3).  Plaintiff alleges that Defendants unlawfully included the Copyrighted Work as part of two phonorecords: Reggaeton Latino and Fiebre de Reggaeton.  The Court discusses the relevant factual circumstances surrounding the distribution of each phonorecord in turn.

**A.   Reggaeton Latino's Distribution**

On October 21, 2005, Gustavo Lopez ("Gustavo"), the president of a division of Defendant UMG Recordings, emailed Raul Lopez ("Raul"), Plaintiff's president, the Copyrighted Work Remix.[2]

---

[1]Plaintiff acquired ownership of the Copyrighted Work from Reggaeton artist Omar Landron. (Docket No. 105, ¶ 4).  Plaintiff received a Certificate of Registration for the Copyrighted Work on June 24, 2004.  (Docket No. 105, ¶¶ 2-4; Docket No. 105-2).

[2]Raul states that the artists professionally known as Fabolous [sic] and Swizz Beatz [sic] used the Copyrighted Work to create the Copyrighted Work Remix in the United States as a work-for-hire for Defendants.  (Docket No. 128, ¶¶ 14-15).

-4-

(Docket No. 120, ¶ 1).  Gustavo told Raul to "listen and call me."
(Docket No. 120-1).  According to Gustavo's unsworn statement under
penalty of perjury, "upon hearing the remix, Mr. [Raul] Lopez
expressly gave me his consent to use and distribute the record."
(Docket No. 120, ¶ 1; 120-2, ¶ 8).

On October 26, 2005, Jeffery Koenig ("Koenig"), Defendants'
in-house counsel, sent Gustavo and Raul a draft contract entitled
Re-Mixer Agreement (the "Re-Mixer Agreement").  (Docket No. 120-3).
The Re-Mixer Agreement provided that Plaintiff would grant
Defendants the right to, *inter alia*, remix the Copyrighted Work and
include the Remixed Copyrighted Work as part of Reggaeton Latino.
(Docket No. 120-3, ¶ 1).  Koenig asked for Plaintiff's authorized
signatory to sign the document.  (Docket No. 120, ¶ 4; Docket No.
120-3).

On November 15, 2005, Koenig emailed Patricia MacMurray
("MacMurray"), Plaintiff's attorney, a revised version of the Re-
Mixer Agreement (the "Revised Re-Mixer Agreement").  (Docket No.
120, ¶ 5; Docket No. 120-4).  Koenig asked MacMurray to print five
(5) copies of the Revised Re-Mixer Agreement and have Plaintiff's
authorized signatory sign the documents.  (Docket No. 120, ¶ 5;
Docket No. 120-4).  MacMurray responded to Koenig noting that she
sent the Revised Re-Mixer Agreement for "Luar's signature."
(Docket No. 120-5).  On November 22, 2005 and again on November 27,
2005, Koenig asked MacMurray if she received the signed documents

-5-

from Raul. (Docket No. 120-5). MacMurray told Koenig on November 28, 2005, that she sent the documents to Raul to sign, but that he is out of the office and would not return until the following Friday. (Docket No. 120, ¶ 8; Docket No. 120-5). Koenig responded by email on the same day as follows:

> Until we receive the signed paperwork, for the avoidance of doubt, this e-mail shall confirm that Luar Music approved of Universal's re-mix of "Dale Don Dale" and granted Universal the right to exploit this re-mix in the manner described in the re-mixer agreement (and that Universal is proceeding in reliance herein).

(Docket No. 120-5). MacMurray responded "OK." (Id.; Docket No. 120, ¶ 9). The Revised Re-Mixer agreement was never signed. (Id.) Nevertheless, Defendants distributed Copyrighted Work Remix in the United States as part of Reggaeton Latino. (Docket No. 120, ¶ 8).

**B.    Fiebre de Reggaeton's Release and Distribution**

The Copyrighted Work was included as part of Fiebre de Reggaeton, which was distributed in Mexico. (Docket No. 120, ¶ 11; Docket No. 105-4). The parties dispute Defendants involvement in Fiebre de Reggaeton's distribution. According to Gustavo, Fiebre de Reggaeton was distributed independently by non-party Universal Music Mexico. (Id.). According to Raul, Gustavo and Walter Kolm, UMG's President, admitted to him that they provided the Copyrighted Work "masters" to non-party Universal Mexico. (Docket No. 128, ¶ 11; Docket No. 127-34, ¶ 10; Docket No. 128, ¶ 15). In any event, Defendant Universal Music Group's logo appears on Fiebre de

-6-

Reggaeton's cover artwork.  (Docket No. 105, ¶ 5; Docket No. 105-4).

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be entered where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(c);  see Celotex Corp. v. Catrett, 477 U.S. 317, 324-25 (1986).  Pursuant to the clear language of the rule, the moving party bears a two-fold burden: it must show that there is "no genuine issue as to any material facts," as well as that it is entitled to judgment as a matter of law."  Veda-Rodriguez v. Puerto Rico, 110 F.3d 174, 179 (1st Cir. 1997).  A fact is "material" where it has the potential to change the outcome of the suit under governing law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "genuine" where a reasonable jury could return a verdict for the nonmoving party based on the evidence.  Id.  Thus, it is well settled that "the mere existence of a scintilla of evidence" is sufficient to defeat a properly supported motion for summary judgment.  Id.

After the moving party meets this burden, the onus shifts to the non-moving party to show that there still exists "a trial

worthy issue as to some material facts." Cortes-Irizarry v. Corporacion Insular, 111 F.3d 184, 187 (1st Cir. 1997).

At the summary judgment stage, the trial court examines the record in the light most flattering to the non-movant and indulges in all reasonable references in that party's favor. Only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cadle Co., 116 F.3d at 959-60. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Reeves v. Sanderson Plumbing Prod., 530 U.S. 133, 150 (2000)(quoting Liberty Lobby, Inc., 477 U.S. at 250-51). Summary judgment is inappropriate where there are issues of motive and intent as related to material facts. See Poller v. Columbia Broad. Sys., 369 U.S. 470, 473 (1962)(summary judgment is to be issued "sparingly" in litigation "where motive and intent play leading roles"); see also Pullman-Standard v. Swint, 456 U.S. 273, 288 (1982)("[F]indings as to design, motive and intent with which men act [are] peculiarly factual issues for the trier of fact."); see also Dominguez-Cruz v. Shuttle Caribe, Inc., 202 F.3d 424, 433 (1st Cir. 2000)(finding that "determination of motive and intent . . . are questions better suited for the jury"). Conversely, summary judgment is appropriate where the nonmoving party rests solely upon "conclusory allegations,

improbable inferences and unsupported speculation." Ayala-Gerena, 95 F.3d at 95.

## DISCUSSION

A prima facie case of copyright infringement requires proof of two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)(internal citations omitted). Plaintiff argues that there is no issue of material fact that Defendants infringed on their rights to the Copyrighted Work when Defendants released Reggaeton Latino and Fiebre de Reggaeton. (Docket No. 104, pages 1, 3-11). Defendants counter that: (1) Plaintiff granted them an exclusive license or, in the alternative, an implied license to use the Copyrighted Work in Reggaeton Latino; and (2) Fiebre de Reggaeton was released by non-party Universal Mexico, outside the Copyright Act's territorial reach. (Docket No. 119, pages 2-10). The Court addressees each contention in turn.

## I.   Reggaeton Latino

A license is an affirmative defense that immunizes a party that uses copyrighted material from liability. I.A.E., Inc. v. Shaver, 74 F.3d 768, 775 (7th Cir. 1996). The Copyright Act recognizes two varieties of licenses: exclusive and nonexclusive. Id.; see Estate of Hevia, 602 F.3d at 40. As the party claiming the existence of a license, Defendants bear the burden of proving

-9-

the license's existence.  See Id. at 41 (citing John G. Danielson, Inc. v. Winchester-Conant Props., Inc., 322 F.3d 26, 40 (1st Cir. 2003)).

### A.   Exclusive License

Koenig sent Raul the Re-Mixer Agreement and Revised Re-Mixer Agreement, which provided that Plaintiff would grant Defendants the right to, *inter alia*, remix the Copyrighted Work and include the remixed version as part of Reggaeton Latino. (Docket No. 120-3, ¶ 1).  However, neither the Re-mixer Agreement nor the Revised Re-Mixer Agreement was ever signed by Plaintiff's duly authorized agent.  To be valid, an exclusive license must be (1) in writing, and (2) signed by the copyright owner or the copyright owner's "*duly* authorized agent."  17 U.S.C. § 204(a)(emphasis added)("A transfer of copyright ownership, other than by operation of the law, is not valid unless an instrument of conveyance, or a note of memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent.");  Winchester-Conant Props., 322 F.3d at 40.  Defendants argue that Koenig's email exchange with MacMurray coupled with the Revised Re-Mixer Agreement amount to a written and signed exclusive license. (Docket No. 119, page 7).

Even assuming, *arguendo*, the Revised Re-Mixer Agreement and Koenig and MacMurray's email exchange constitute a writing, there is no issue of material fact that Plaintiff properly granted

Defendants an exclusive license because the Revised Re-Mixer Agreement was never signed by Plaintiff's duly authorized agent. The email exchanges were between Defendants and MacMurray; however, MacMurray is not Plaintiff's duly authorized agent, Raul is. (Docket No. 105-5, ¶ 8).

The term "duly authorized" is not defined by the Copyright Act. See 17 U.S.C. § 101. Neither the First Circuit nor the district courts encompassing the First Circuit have articulated who constitutes a duly authorized agent within the meaning of the Copyright Act. The leading treatise on copyright law opines that "being 'duly authorized' requires something much more than casual oral permission." Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 10.03[A][4] (2011). There is no evidence in the record that indicates that MacMurray was ever vested, orally or otherwise, with the authority to grant licenses for copyrighted material owned by Plaintiff. Rather, according to Raul's unsworn statement made under penalty of perjury, Raul who did not sign the Re-Mixer Agreement, the Revised Re-Mixer Agreement or any other relevant document, was Plaintiff's only authorized signatory. (Docket No. 105-5, ¶ 8).

Defendants argue that Plaintiff is estopped from denying that MacMurray was duly authorized to grant licenses because MacMurray held herself out as Plaintiff's agent. (Docket No. 119, page 7)("all throughout the negotiations of the Re-Mixer Agreement, Mrs.

Rivera [MacMurray] conducted herself as Luar's authorized representative and UMG relied on said representations."). However, the record belies this contention. The Court finds that there is no indication that MacMurray held herself out as Plaintiff's authorized agent. To the contrary, the emails exchanged between Koenig and MacMurray show that Koenig was well aware that MacMurray was not Plaintiff's duly authorized agent. Koenig emailed MacMurray the Revised Re-Mixer Agreement and asked MacMurray to have "an authorized signatory of Luar Music sign in the appropriate indicated space." (Docket No. 120-4). Further supporting this conclusion is MacMurray's response as she told Koenig that she sent the documents "over for Luar's signature." (Docket No. 120-5). A few days later, Koenig asked Macmurray if she "received the signed documents from Raul." (Docket No. 120-5). MacMurray responded that Raul has been out of the office and has not been able to sign the Revised Re-Mixer Agreement. (Docket No. 120-5). This email exchange demonstrates that neither Koenig nor MacMurray considered MacMurray to be Plaintiff's duly authorized agent. Nevertheless, despite not having Raul's signature, Defendants chose to release Reggaeton Latino. Thus, the record indicates that Koenig knew that Raul was the only person capable of granting an exclusive license and as a result Plaintiff is not estopped from denying that MacMurray was its duly authorized agent.

Because there is no evidence on the record indicating that

MacMurray was duly authorized to license the Copyrighted Work, there is no genuine issue of material fact that Defendants had an exclusive license to use the Copyrighted Work.  For Defendants to avoid liability, Defendants must establish that Plaintiff granted Defendants a nonexclusive license.

**B.   Nonexclusive License**

Unlike an exclusive license, a non-exclusive license may be granted (1) orally, (2) in writing, or (3) impliedly through conduct where the copyright owner manifests the intent to grant a nonexclusive license.  See Estate of Hevia, 602 F.3d at 41; Jacob Maxwell, Inc. v. Veeck, 110 F.3d 749, 753 (11th Cir. 1997); 3-10 Nimmer on Copyright § 10.03, 8 ("nonexclusive licenses may therefore be granted orally, or may even be implied from conduct.").  Defendants argue that not only did Plaintiff acquiesce to their use of the Copyrighted Work Remix, Raul expressly granted Gustavo permission to use the Copyrighted Work Remix.

Defendants contend that Plaintiff did not object to Plaintiff's use of the Copyrighted Work in Reggaeton Latino for nearly three years after it was released.[3]  (Docket No. 119, page 6).  Nonexclusive licenses may be granted if the copyright owner does not object to the putative infringer's use of copyrighted

---

[3]Indeed, this Court previously concluded that Defendants had inquiry knowledge that Defendants allegedly infringed on Plaintiff's rights to the Copyrighted Work when Reggaeton Latino were was released but did not diligently assert its rights in court.  Luar Music I, 2012 WL 738987, at * 12-14.

-13-

material.   <u>John G. Danielson, Inc. v. Winchester-Conant Props.,</u>
<u>Inc.</u>, 186 F. Supp. 2d 1, 18–19 (D. Mass. 2002)(citing <u>I.A.E.</u>, 74
F.3d at 775).   The record indicates that Plaintiff complained to
Defendants as early as November 12, 2006 about an apparent dispute,
though it is unclear the subject of the dispute.   On January 24,
2007, Raul wrote MacMurray saying that he had several legal claims
that he needed to submit including an action against Defendants for
the release of a remixed version of the Copyrighted Work.   (Docket
No. 143-5).   Plaintiff also submitted a letter dated August 7, 2008
and an email dated February 12, 2009 wherein Plaintiff accuses
Defendants of using a remixed version of the Copyrighted Work in
Reggaeton Latino.   (Docket No. 105-8, ¶ 5; Docket No. 143-14, 15).
The Court is unable to determine whether Plaintiff's acquiesced to
Defendants' use of the Copyrighted Work Remix because the parties
never informed the Court when Reggaeton Latino was released.
Without knowing the release dates, the Court is unable to determine
the amount of time that passed between Reggaeton Latino's release
and Plaintiff's objections to the release of Reggaeton Latino.

     Nevertheless, there are questions of fact as to whether
Plaintiff granted Defendants a nonexclusive license orally.
Defendants establish a question of material fact as to whether Raul
granted Defendants a nonexclusive license when they submitted
Gustavo's unsworn statement under penalty of perjury wherein
Gustavo states that, "upon hearing the remix, Mr. [Raul] Lopez

expressly gave me his consent to use and distribute the record."
(Docket No. 120-2, ¶ 8); see Winchester-Conant Props., 322 F.3d at
40 ("A copyright owner may grant such nonexclusive licenses orally
. . .").

Unsworn statements, such as Gustavo's, may be used in support
of a summary judgment motion. Goldman, Antonetti, Ferraiuoli,
Axtmayer & Hertell v. Medfit Int'l, Inc., 982 F.2d 686, 689 (1st
Cir. 1993)(citing 28 U.S.C. § 1746)("Under federal law, an unsworn
statement signed under penalty of perjury may be used, in lieu of
a sworn statement or affidavit, to support or oppose a motion for
summary judgment."). Gustavo's unsworn statement establishes that
there is a question of material fact: whether Plaintiff granted
Defendants a nonexclusive license. However, Plaintiff is not
entitled to summary judgment in its favor. First, it is unclear
whether Gustavo is referring to the Revised Re-Mixer Agreement or
a separate oral or written agreement. Second, Gustavo's statement
raises issues of credibility, which are a jury's, not a Judge's
provenance. Sanderson Plumbing Prod., 530 U.S. at 150 (quoting
Liberty Lobby, 477 U.S. at 250-51). Accordingly, because there are
questions of fact as to whether Plaintiff granted Defendants a non-
exclusive license to use the Copyrighted Work Remix in Reggaeton
Latino, Plaintiff survives, but is not itself entitled to summary
judgment.

**II.  Fiebre de Reggaeton**

Plaintiff argues that Defendants violated its rights to the Copyrighted Work when Defendants distributed Fiebre de Reggaeton. Defendants argue, and Plaintiff concedes, that Fiebre de Reggaeton was released in Mexico.[4]  (Docket No. 119, pages 9-10; Docket No. 128, ¶ 5; Docket No. 127-23).  As Fiebre de Reggaeton was released abroad, Defendant argues that any alleged infringement is beyond the territorial reach of the Copyright Act and not actionable in the United States.  (Id.)

The general rule is that the Copyright Act does not apply to copyright violations occurring outside the United States.[5] Subafilms, Ltd. v. MGM-Pathe Commn'ns Co., 24 F.3d 1088, 1098 (9th Cir. 1994); Elsevier Ltd. v. Chitika, Inc., No. 11-10026, 2011 WL 6008975, at *3 (D.Mass Dec. 2, 2011)(quoting Update Art, Inc. v. Modiin Publ'g, Ltd., 843 F.2d 67, 73 (2d Cir. 1998)).  Plaintiff,

---

[4]Plaintiff first attempted to argue that Defendants directly released Fiebre de Reggaeton in Mexico.  (Docket No. 105, ¶ 5-6; Docket No. 127-23). However, Plaintiff apparently abandoned their contention once Defendants asserted that Fiebre de Reggaeton was released by a non-party Universal Mexico.  (Docket No. 129, pages 15, 22-23; Docket No. 128, ¶ 5).  In any event, in the case at bar, who released Fiebre de Reggaeton is not as important as where it was released.

[5]Some courts have treated the Copyright Act's extraterritorial reach as concerning the courts' subject matter jurisdiction.  See e.g., Palmer v. Braun, 376 F.3d 1254 (11th Cir. 2004);  Peter Starr Prod. Co. v. Twin Cont'l Films, Inc., 783 F.2d 1440, 1441 (9th Cir. 1986);  Music Sales Ltd. v. Charles Dumont & Son, Inc., 800 F. Supp. 2d 653 (D.N.J. 2009).  In Arbaugh v. Y & H Corp., 546 U.S. 500, 502 (2006), the Supreme Court stated that "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as non-jurisdictional in character."  The extraterritorial limitation on the Copyright Act does not reflect a congressional intent to limit the federal court's jurisdiction.  See Litecubes, LLC v. N. Light Prods., 523 F.3d 1353, 1368 (Fed Cir. 2008). Accordingly, the Court will treat the extraterritorial limitation of the Copyright Act as a substantive element of a copyright infringement claim, rather than a jurisdictional requirement.  Id. (citing Arbaugh, 546 U.S. at 502).

however, invokes the predicate act exception to the general bar on the extraterritorial application of the Copyright Act.  Plaintiff contends that Defendants are still liable for the alleged infringement that took place in Mexico because of Defendants' "infringement occurring in the United States, through the latter's [Defendants] unauthorized reproduction and distribution of the original masters which supplied the former [Universal Mexico] with the instruments for committing the infringement." (Docket No. 129, page 14).

Under the predicate act exception, a party may be liable for infringing acts abroad if the plaintiff establishes that (1) Defendants violated the Copyright Act within the United States; and (2) the alleged infringement "permits further reproduction abroad." Update Art, 843 F.2d at 72-73; Elsevier, 2011 WL 6008975, at *3-4 (D. Mass. Dec. 2, 2011).  In other words, the predicate act exception applies where there are at least two infringing acts: the domestic distribution of copyrighted material and the international distribution of the copyrighted material that was unlawfully distributed domestically.  Id.; see 2 Litigation of International Disputes in U.S. Courts § 8:44.

As previously mentioned, a copyright infringement claim requires proof of two elements: (a) ownership of a valid copyright, and (b) copying one of the constituent elements of the work that are original.  Feist Publ'ns, 499 U.S. at 361 (internal citations

-17-

omitted).  The first element is not in dispute because Defendants concede that Plaintiff owns the Copyrighted Work.  (Docket No. 105, ¶¶ 2-3).  At issue, however, is the second element: whether Defendants copied the constituent elements of the Copyrighted Work.

Copying requires that (i) "the defendant actually copied the work as a factual matter"; and (ii) "that the defendant's copying of the copyrighted material was so extensive that it rendered the infringing and copyrighted works substantially similar." Airframe Sys., Inc. v. L-3 Commc'ns Corp., 658 F.3d 100, 105 (1st Cir. 2011)(internal citations and quotations omitted).  A party copies copyrighted material when they infringe on the owner's six exclusive rights contained in 17 U.S.C. § 106: the right to reproduce, prepare derivative works, distribute, display and perform digitally or otherwise.  Plaintiffs allege that Defendants infringed on their right to distribute the copyrighted work to the public.  (Docket No. 128, ¶ 11; Docket No. 127-34, ¶ 10; Docket No. 128, ¶ 15).

Section 106(3) of the Copyright Act grants copyright owner's the exclusive right to "distribute copies . . . of copyrighted work to the public by sale or other transfer of ownership."  17 U.S.C. § 106(3).  A party infringes on a copyright even where they distribute copyrighted material to one person. Ford Motor Co. v. Summit Motor Prods., Inc., 930 F.2d 277, 299 (3d Cir. 1991)("because 'publication' and the right protected by section

106(3) are the same, and because a 'publication' can occur when only one member of the public receives a copyrighted work, it follows that a violation of section 106(3) can also occur when illicit copies of a copyrighted work are only distributed to one person."). Raul states that Walter Kolm, UMG's President, and Gustavo admitted to him that they provided the Copyrighted Work "masters" to non-party Universal Mexico. (Docket No. 128, ¶ 11; Docket No. 127-34, ¶ 10; Docket No. 128, ¶ 15). The key ingredient to the predicate act exception is whether an infringing act actually occurred within the United States. <u>Update Art</u>, 843 F.3d at 72-73 ("If the illegal reproduction of the poster occurred in the United States and then was exported to Israel, the magistrate properly could include damages accruing from the Israeli newspapers. If, as appellants assert, this predicate act occurred in Israel, American copyright laws would have no application to the Israeli newspapers."). Nevertheless, Plaintiff has not raised an issue of material fact that Defendants provided the Copyrighted Work masters to non-party Universal Mexico in the United States. While it is conceivable that Defendants gave non-party Universal Mexico the Copyrighted Work masters in the United States, mere speculation is insufficient to survive summary judgment. <u>See</u> <u>Ayala-Gerena</u>, 95 F.3d at 95.

That Defendants may have commissioned the artists professionally known as Fabolous and Swizz Beatz to remix the

Copyrighted Work as a work-for-hire is not dispositive.  (See Docket No. 128, ¶ 15). Fiebre de Reggaeton features the Copyrighted Work, not the Copyrighted Work Remix. The predicate act exception requires the alleged domestic infringement to permit further reproduction abroad.  Update Art, 843 F.2d 67, 72-73; Elsevier, 2011 WL 6008975, at *3-4. Therefore, it could hardly be said that Defendants permitted further reproduction by Universal Mexico because Universal Mexico is not accused of reproducing the Copyrighted Work Remix.

As Plaintiff has failed to meet the required threshold in establishing a question of material fact that Defendants violated the Copyright Act in the United States, Plaintiff is unable to avail itself of the predicate act exception.  Without the predicate act exception, Plaintiff's action for damages arising for the distribution of the Copyrighted Work as part of Fiebre de Reggaeton fails as a matter of law because the Copyright Act does not apply exterritorially.[6]  See Subafilms, 24 F.3d at 1089.  Whether Plaintiff is ultimately able to recover damages for Defendants' alleged infringing acts is a question that is properly addressed by Mexico's, not the United States', intellectual property laws.

---

[6]The solution is similar in labor law in Puerto Rico as the Puerto Rico Supreme Court has held that two Puerto Rico labor laws, Section 15 of the Constitution of the Commonwealth of Puerto Rico and Puerto Rico Law No. 379 of May 15, 1948, 29 L.P.R.A. § 274, do not apply to workers who are hired in Puerto Rico but work in the United States.  Green Giant Co. v. Tribunal Superior, 4 P.R. Offic. Trans. 682 (1975).

**CONCLUSION**

For the reasons stated above, Plaintiff's motion for summary judgment (Docket No. 104) is hereby **DENIED** and Defendants' cross-motion for summary judgment (Docket No. 119) is hereby **DENIED in part**. There are questions of fact concerning whether Plaintiff granted Defendants a nonexclusive license to include the Copyrighted Work Remix as part of Reggaeton Latino. There is no question of material fact that Defendants committed a predicate act of copyright infringement in the United States that facilitated the distribution of the Copyright Work as part of Fiebre de Reggaeton in Mexico.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 22nd day of May, 2012.

/s/ DANIEL R. DOMÍNGUEZ

DANIEL R. DOMÍNGUEZ
U.S. District Judge